**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| HARCO NATIONAL INSURANCE COMPANY | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No.  4:24-CV-01134-O |
| GASPARD & MENON CONSTRUCTION, LLC, ET AL., | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court are Plaintiff's Second Motion for Injunctive Relief (ECF No. 39) and Brief in Support (ECF. No. 41), Plaintiff's Motion for Summary Judgment (ECF No. 42) and Brief in Support (ECF No. 43), filed on July 30, 2025; Defendant Suneel Menon's Response to Plaintiff's Motion for Summary Judgment (ECF No. 48) and Appendix in Support (ECF No. 49), and Defendant Suneel Menon's Response to Plaintiff's Second Motion for an Injunction (ECF No. 50) filed on August 27, 2025; Plaintiff's Reply to the Second Motion for Injunctive Relief (ECF No. 51), and Plaintiff's Reply to the Motion for Summary Judgment (ECF No. 52), both filed on September 10, 2025. Having considered the briefing and relevant caselaw, Plaintiff's Motion for Injunctive Relief (ECF No. 39) is **DISMISSED as MOOT** and Plaintiff's Motion for Summary Judgment (ECF No. 42) is **GRANTED**.

1

## I.    BACKGROUND[1]

This case concerns a dispute over an indemnification contract between a construction company and a surety. Under contracts like this one, a surety and a construction company will enter into an agreement where the surety issues bonds to third parties. Those bonds may cover liability, loss, or lack of performance. If liability, loss, or lack of performance occurs, the construction company is required to reimburse the surety for expenses it made on the construction company's behalf.

Defendants are several LLCs and several individuals, and some of the named individuals are also the sole members of the named LLCs. All named defendants ("Defendants") signed and entered into an indemnity agreement with Harco National Insurance ("Plaintiff"), the surety. The plaintiff-surety issued multiple payment and performance bonds providing protection should something go wrong with several federal construction projects on which Defendants are working. As part of the agreement, the bonds were secured by Defendants' collateral, specifically several deeds of trust to property.

Plaintiff now asserts a contractual right to (1) reimbursement for execution of payment and performance bonds and (2) force Defendants to post more collateral. Plaintiff alleges that numerous claims have been made on the performance and payment bonds issued in connection with the Defendants' construction projects and therefore, Defendants owe Plaintiff for payments made pursuant to the bonds. Plaintiff also estimates its potential exposure to liability is a little over

---

[1] Unless otherwise specified, the Court's recounting of the facts in this case is drawn from briefing submitted by the parties. *See generally* Pl.'s Second Mot. Inj. Relief, ECF No. 41; Pl.'s Mot. Summ. J., ECF No. 42; Def.'s Resp. to Pl.'s Mot. Summ. J. ECF No. 48; Def.'s Resp. to Pl.'s Second Mot. Inj. Relief, ECF No. 50; Pl.'s Reply to Second Mot. Inj. Relief, ECF No. 51; and Pl.'s Reply to Mot. Summ. J., ECF No. 52.

$11 million, and requests that Defendants post additional collateral—beyond the $2 million already posted—to cover it.

Before and during this litigation, Plaintiff issued demand letters seeking Defendants reimbursement and collateral.[2] Defendants do not dispute the validity of the agreement—only the amount of liability and need for extra collateral.

The indemnity agreement has four provisions pertaining to Plaintiff's claims. First, the Defendants jointly and severally agreed to exonerate and indemnify Plaintiff for any losses including attorneys' fees. Specifically, the language states that Defendants:

> shall exonerate, indemnify, and keep indemnified the Surety from and against any and *all liability for losses and/or expenses of whatsoever kind of nature* (including, but not limited to, interest, court costs and the costs of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain or incur: (1) By reason of having executed . . . the Bonds, (2) By reason of the failure of the [Defendants] to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this [indemnity] Agreement.[3]

Second, the agreement also contains a collateral security clause which provides how much collateral Plaintiff can require Defendants to provide. This "Collateral Security Provision" provides that Defendants:

> shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, *whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss*.[4]

The Collateral Security Provision also states exactly when Defendants shall deposit the demanded collateral with Plaintiff.

---

[2] *See* Pl.'s App. Supp. Mot. Summ. J. Ex. A-2 (September 2024 Demand Letter), App. 44–49, ECF No. 43-1; *see also Id.* at Ex. A-3 (March 2025 Demand Letter), App. 109–115, ECF No. 43-1.
[3] Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 16, ECF No. 43-1 (emphasis added).
[4] *Id.* (emphasis added).

> *If for any reason the Surety deems it necessary* to demand an additional amount of collateral security to cover any possible additional liability or loss, the [Defendants] shall deposit with the surety, *immediately upon the Surety's demand*, an additional amount of collateral security equal to such demand.[5]

Further, the contract has a "Prima Facie Evidence Clause" under which the parties contracted as to the burden the Surety carries to show it made payments in good faith. The provision states that payments and collateral that Plaintiffs demand of Defendants must be made in good faith, but that good faith is legally satisfied by a showing of a "voucher or other evidence of any such payment(s)." The contract language reads:

> In the event of any payment by the Surety the [Defendants] further agree that in any accounting . . . the Surety shall be entitled to charge for any and all disbursements made by it in *good faith* in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether or not such liability, necessity or expediency existed*. The vouchers or other evidence of any such payment(s) made by the Surety shall be *prima facie evidence of the fact and amount of the liability* to the Surety, and of the Surety's good faith in making the payment(s). "Good faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful malfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.[6]

Relying on these provisions, Plaintiff filed its complaint on November 19, 2024, alleging that Defendants breached the indemnity agreement, seeking specific performance of the contract, an order restricting Defendants from encumbering their assets until the requisite collateral is posted, and attorneys' fees, interest and expenses under the contract.[7] Plaintiff then filed its first request for a preliminary injunction on November 20, 2024,[8] which this Court denied on April 23, 2025 because the injury was only monetary, and thus did not amount to irreparable harm.[9]

---

[5] *Id.* (emphasis added).
[6] *Id.* (emphasis added).
[7] Pl.'s Verified Original Compl. 11–15, ECF No. 1.
[8] Pl.'s First Mot. Injunctive Relief, ECF No. 2.
[9] Order Denying Mot. Injunctive Relief, Apr. 23, 2025, ECF No. 27.

Three months later, Plaintiff filed a second motion for a preliminary injunction. Plaintiff seeks an Order (1) compelling Defendants to indemnify or exonerate Plaintiff, (2) requiring Defendants to post $9,360,680.94 in additional collateral to Plaintiff, (3) restricting Defendants from selling, transferring, alienating, or otherwise encumbering any of their assets (until such time as the requisite collateral is posted), and (4) compelling Defendants to furnish free access to their books and records to Plaintiff.[10]

Plaintiff then filed its motion for summary judgment against the Defendants for breach of the indemnity agreement seeking 1) indemnity for losses and expenses incurred as a result of issuing the bonds—specifically for $3,143,596.04; and (2) specific performance compelling Defendants to post collateral to the Surety in the sum of $9,360,680.94, plus any additional funds necessary to enforce this, as required by the indemnity agreement.[11]

Of all Defendants mentioned above, only one Defendant, Suneel Menon, responded to the ripe motions at issue.[12]

## II.   LEGAL STANDARDS

### A. Summary Judgment

A movant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[10] Pl.'s Verified Supp. Compl. 2, ECF No. 23. Plaintiff's claim demanding books and records is also based on the contractual rights afforded in the indemnity agreement.

[11] Pl.'s Br. Supp. Mot. Summ. J. 2, 24, ECF No. 43.

[12] Counsel for the remaining eight defendants (Yulia Lukyanchenko; Jared Morgan; Laura Gaspard; Jonathan Gaspard; Sedmore Properties, LLC; Gaspard Roofing, LLC; Gaspard Properties, LLC; Gaspard and Morgan Construction, LLC) filed a Motion to Withdraw (ECF No. 29) which the Court granted. Min. Entry, Mar. 28, 2025, ECF No. 34. Since then, those eight defendants have remained pro se, while one defendant, Suneel Menon is represented by counsel. Only Suneel Menon responded to Plaintiff's motions. When no response is filed, the court may accept the movant's version of the facts as true and grant summary judgment when a prima facie showing for entitlement to judgment is made. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Therefore, the Court's judgment in this Order applies to all the named Defendants for the reasons explained herein.

a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

A party seeking summary judgment must inform the court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

### B.  Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (quoting *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)); *see also* FED. R. CIV.  P. 65(a). Courts issue a preliminary injunction only if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant must make a clear showing that the

injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.*

### III.   ANALYSIS

#### A. Motion for Summary Judgment

Plaintiff seeks summary judgment on its claim for indemnity—in the amount of $3,143,596.04—and its request for specific performance of the collateral obligations—in the amount of $9,360,680.94. The Court addresses each in turn.

#### i.   *Indemnity*

Under Texas Law[13] a plaintiff must satisfy five elements to prevail on a cause of action for indemnity: (1) a contractual indemnity agreement exists; (2) the agreement obligates defendants to indemnify the surety in the event claims are made on the bonds issued; (3) claims were made on the bonds issued; (4) all conditions precedent for recovery have occurred, been performed, waived or excused; and (5) the surety has been damaged. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995). Defendants contest only the last element—damages—and claim Plaintiff has not met its burden of proof through the receipts and calculations in evidence.[14]

---

[13] In Defendants' response to Plaintiff's first motion for injunctive relief, they claimed that New Jersey law governs the contract dispute. Defs.' Resp. to Pl.'s First Mot. Inj. Relief 8–9, ECF No. 18. The provision Defendants pointed to was merely a clause stating that the parties assent to personal jurisdiction in New Jersey. Defendants have since dropped the argument. Also, while Defendant Suneel Menon makes no express appeal to apply Texas law, he does not contest Plaintiff's consistent application of Texas law in the briefing. Still, Texas law would apply under the Texas' choice of law rules—the most significant relationship test—because the contract was signed in Texas and all Defendants are domiciled in Texas, while the construction occurred in various states across the country. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 680 (Tex. 2004) (applying to most significant relationship test to contract disputes without a choice of law clause). Regardless, Texas courts have consistently held that if a party does not timely raise a choice of law issue—which Defendants have not—the Court may apply Texas law by default. *See e.g.*, *Pittsburg Corning Corp. v. Walters*, 1 S.W.3d 759 (Tex. App.—Corpus Christi-Edinburg 1999, pet. denied).

[14] Def.'s Resp. to Pl.'s Mot. Summ. J. 2–7, ECF No. 48 (claiming Plaintiff cannot prove its damages with conclusory evidence and that Plaintiff has not support its motion with vouchers).

In proving the specific dollar amount, Plaintiff claims it has proffered sufficient evidence under the contract's Prima Facie Evidence Clause. Under that clause, so long as the Plaintiff proffers "vouchers or other evidence" of payment, it has established "prima facie evidence of the fact and the amount of liability[,]" and of their own "good faith."[15] Good faith is defined in the contract as "honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith."[16]

The Fifth Circuit has already held that under Texas law, "[i]n the face of these provisions, an indemnitor may successfully attack payments made by [the] Surety only by pleading and proving fraud or lack of good faith by [the] Surety." *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967). Defendants never make any explicit challenge based on fraud or lack of good faith. The closest Defendants came to a challenge is found in briefing at the outset of this case, in response to Plaintiff's first motion for a preliminary injunction.[17] There, Defendants pointed out that Plaintiff wrote a letter to a bond claimant, concluding Defendants were likely not responsible for any construction delays on one particular bond—"the Walsh bond."[18] Defendant has not again raised the argument since the reply to Plaintiff's first motion for an injunction, which was already denied, so it is not properly before the Court. *See Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 650 (5th Cir. 2025) ("An argument raised in a complaint alone, but not in subsequent briefing, is forfeited.").

---

[15] Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 16, ECF No. 43-1.
[16] *Id.*
[17] Defs.' Resp. to Pl.'s First Mot. for Inj. Relief 6, ECF No. 18 (claiming that the problems with the Walsh performance bond, which has to do with an air force base project, were not the fault of Defendants).
[18] *See id.* (claiming that Defendants do not think there is evidence of their responsibility for the damage and delays, and that Plaintiff wrote a letter communicating this to Walsh); *see also* Defs.' App. Supp. Resp. to Pl.'s First Mot. for Inj. Relief Ex. A-2 (Plaintiff's Letter to Walsh), App. 007–008, ECF No. 19 (Concluding that although Defendant's defenses to the costs and delays "could have merit . . . pending a determination by a trier of fact, [Plaintiff] believes there is an adequate basis for which to reaffirm [Plaintiff's] denial of Walsh's claim").

However, even if the argument was before the Court, the existence of this letter still would not amount to fraud or bad faith. The Fifth Circuit addressed a similar issue in *Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201 (5th Cir. 1996). There, the defendant claimed that the surety could not claim that payments it made under the bond were in good faith when the surety originally disputed one of the claims in a letter, like the one here. *Id.* at 210. However, the court found that the letter did not amount to a showing of bad faith or fraud. *Id.* Under the contract the surety was given full authority to settle the claims and ultimately pay them. So, the fact that the surety disaffirmed the claims and then later paid them out, was not an issue. *Id.* Here, as there, the contract gives the Surety the sole right to determine whether to remit payment.[19] So, the fact that the Plaintiff ultimately decided to remit payment despite originally disaffirming it is insufficient to establish bad faith absent any further arguments or evidence from Defendant.[20]

Merely pointing to one letter disputing the claims does not prove improper motive that raises a genuine issue of material fact as to fraud or good faith. *See also Engbrock*, 370 F.2d at 787 (denying defendants assertion that he pleaded fraud because "neither lack of diligence nor negligence is the equivalent of bad faith: and improper motive, which is not alleged, is an essential element of bad faith").

---

[19] Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 20, ECF No. 43-1 ("The surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.")

[20] Defendants do not point to any evidence indicating that they asked Plaintiff to litigate a claim against Walsh or that Plaintiff failed to do so. Additionally, even if they did, Defendants would still be required to post "cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered." Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 20, ECF No. 43-1. So, ultimately, none of Plaintiff's requests pertaining to the Walsh bond are in bad faith.

9

Instead, Defendant's briefing focuses on whether the evidence Plaintiff proffered even qualifies as a "voucher" under the contract.[21] Defendant claims that Plaintiff has not met the burden of proof under the bargained-for Prima Facie Evidence Clause because "Plaintiff could have—but did not—support the Motion with vouchers for each of the claimed expenses as summary judgment evidence."[22]

The contract permits Plaintiff to present "vouchers or other evidence" as prima facie evidence but does define those terms.[23] Defendant relies on a dictionary definition of the term "expense voucher" from Investopedia.com to claim that Plaintiff is obligated to present further details regarding payment.[24] Specifically, Defendant claims "an expense voucher is an internal accounting document used to request, justify, and process payments for business-related expenses."[25] Therefore, it must "summarize[] the cost, explain[] the business purpose of the expenditure, and include[] supporting documentation like receipts and invoices to ensure proper authorization and accurate financial record-keeping before a payment is made or a reimbursement is issued."[26] Put otherwise, Defendant argues "a voucher is a document used by a company's accounts payable department to gather and file all supporting documents needed to approve the payment of liability."[27] Defendant also relies on three cases to support its argument that the Plaintiff has presented only unexplained, conclusory evidence of damages.[28] While the cases are

---

[21] Def.'s Resp. to Pl.'s Mot. Summ. J. 6, ECF No. 48.
[22] *Id.*
[23] Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 16, ECF No. 43-1 (leaving the phrase undefined).
[24] Def.'s Resp. to Pl.'s Mot. Summ. J. 6 n.3, ECF No. 48.
[25] *Id.*
[26] *Id.* at 6–7.
[27] *Id.* at 7.
[28] *See id.* at 3.

relevant to the usual burden for summary judgment, all three cases have nothing to do with prima

facie evidence clauses or vouchers.[29]

Case law has described what it means to be a voucher in these types of contracts. *See e.g.*,

*Gray Ins. Co. v. Terry*, 606 F. App'x 188, 191 (5th Cir. 2015) (per curiam) (finding that providing

ledgers kept in the ordinary course of business which indicate payments made were sufficient);

*United States Specialty Ins. Co. v. Strategic Planning Assocs., LLC*, 387 F. Supp. 3d 679, 689

(E.D. La. 2019) (plaintiff submitted documents supported by an affidavit with the date each invoice

was received and paid). Moreover, the term voucher is often used interchangeably in these standard

contracts with other forms of evidence, such as itemized statements, invoices, or affidavits, as long

as they substantiate the payment made by the surety. *See e.g.*, *Gundle*, 85 F.3d at 210 ("voucher(s)

or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer

. . . shall be prima facie evidence . . . "); *Merchants Bonding Co. v. Gandler-Snider Engineering

Co.*, No. 3:98-cv-0499-BC, 1999 WL 500226, *3 (N.D. Tex. July 14, 1999) ("an itemized

statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by [an] officer

of the Company . . . ").

Nothing about the evidence Plaintiff presented fails to comply with the caselaw, or even

with Defendant's proposed definition. Plaintiff offers a declaration from Mr. Bryan Badeaux,

senior claims advisor, to attest to the payment records.[30] Plaintiff has included an itemized ledger,

which names the principal, the bond, the claim number, the subclaim, the activity date, the payee,

the amount, and the check number.[31] Defendant may desire the ledger provided more detail about

---

[29] *See id.* (citing *Smiley Team II, Inc. v. General Star Insurance Co.*, No. 23-40129, 2024 WL 2796652 (5th Cir. May 31, 2024) (unpublished); *James L. Gang & Associates, Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 443 (Tex. App.—Dallas 2006, no pet.); and *Stevens v. Bankers Ins. Co.*, 970 F. Supp. 769, 774 (N.D. Cal. 1997).

[30] Pl.'s App. Supp. Mot. Summ. J. Ex. A (Declaration of Bryan Badeaux), App. 5–11, ECF No. 43-1.

[31] *Id.* at Ex. A-13 (Payment Record), App. 426–27.

the cost or encumbrance which makes up each claim, but that is not required. Plaintiff's exhibits include correspondence back and forth between the claimants, Plaintiff, and Defendants, which detail each of the payment and performance problems. Some of those detailed allegations are over a page long.[32]

And for every pending and potential claim Plaintiff received, there is an accompanying demand letter from the bond-claimant explaining why the claimant seeks payment or substituted performance on the construction projects.[33] The demand letters which Plaintiff received on the Walsh, Gideon, StructSure, and Grimberg bonds all detail what caused the allege damages and delays.[34] Plaintiff also incorporates these by reference in its demand letters to Defendants.[35] Also, in Plaintiffs demand letters to Defendants, Plaintiff explains the pricing of bids from completion contractors and their negotiation process on these performance bonds.[36]

All of this taken together meets the requirement of presenting "vouchers or other evidence." Therefore, the Court concludes that Plaintiff has established its prima facie case for damages through vouchers and Defendant has not met the evidentiary burden to prove fraud or bad faith.

---

[32] *Id.* at Ex. A-4 (Walsh Default Notices), App. 149–52.

[33] Pl.'s App. Supp. Mot. Summ. J. Ex. A-4 (Walsh Default Notices), App. 148–338; *id.* at Ex. A-5 (Gideon Notice), App. 339–41; *id.* at Ex. A-6 (StructSure Notice), App. 342–65; *id.* at Ex. A-8 (Grimberg Notice), App. 393–95.

[34] Pl.'s App. Supp. Mot. Summ. J. Ex. A-4 (Walsh Default Notices), App. 148–338; *id.* at Ex. A-5 (Gideon Notice), App. 339–41; *id.* at Ex. A-6 (StructSure Notice), App. 342–65; *id.* at Ex. A-8 (Grimberg Notice), App. 393–95.

[35] Pl.'s App. Supp. Mot. Summ. J. Ex. A-2, A-3 (Demand Letters to Defendants), App. 43–147, ECF No. 43-1.

[36] *Id.*

### ii.    *Additional Collateral*

Under the Collateral Security Provision, Plaintiff requests that the Court award specific performance—in addition to the damages for already-made payments discussed above.[37] Specifically, Plaintiff seeks an order requiring Defendants to comply with the terms of the contract and post the additional collateral Plaintiff has been requesting so that Plaintiff may cover its estimated exposure to future liability.[38]

In Texas, specific performance may be granted if "(1) the contract is reasonably certain, unambiguous, and based on valuable consideration; (2) the contract is fair in every section, void of misrepresentation, misapprehension, fraud, mistake, imposition, or surprise; (3) the parties are so situated that specific performance will not be harsh or oppressive; and (4) the party seeking specific performance must come into court with clean hands." *Liberty Mutual Ins. Co., v. Nat'l Pers. of Texas. Inc.*, No. Civ. A. 3:02-cv-1341. 2004 WL 583531, *2 (N.D. Tex. Mar. 24, 2004) (applying Texas contract law to a collateral security clause).

Here, the contract's Collateral Security Provision clearly provides that Defendants "*shall deposit* with the [Plaintiff] on demand *an amount of money or other collateral security* acceptable to the [Plaintiff], as soon as liability exists or is asserted against the [Plaintiff], whether or not the [Plaintiff] shall have made any payment therefore, equivalent to such amount that the [Plaintiff], in its sole judgment, shall deem sufficient to protect it from loss."[39] And "if *for any reason* the [Plaintiff] deems it necessary to demand an additional amount of collateral security to cover any

---

[37] Pl.'s Br. Supp. Mot. Summ. J. 2, ECF No. 43.
[38] *Id.* at 21.
[39] Pl.'s App. Supp. Mot. Summ. J. Ex. A-1 (indemnity agreement), App. 16, ECF No. 43-1 (emphasis added).

13

possible liability or loss, the [Defendants] *shall deposit* with the [Plaintiff], immediately upon the [Plaintiff's] demand, *an additional amount of collateral security* equal to such demand."[40]

Additionally, nothing in the record suggests any unfairness in the contract, oppressiveness in requiring parties to comply with its terms, or unclean hands on the part of Plaintiff. It is simple—Defendants signed a contract promising to post collateral. Originally, the Defendants collectively tendered real property deeds to the surety which have a total appraised value of no more than $2.03 million.[41] Plaintiff now explains that $9,360,680.94 in additional collateral is needed because claims on the Walsh, Gideon, StructSure, and Grimberg bonds, if valid, could yield liability up to $11,390,680.94.[42] Plaintiff details and supports these expenses with the same evidence laid out in the above section. *See* discussion *supra*-Section *III*.C.i.

Defendant challenges none of these elements. Instead, Defendant argues that there is no need to post more collateral because Plaintiffs point to "no evidence . . . of Mr. Menon's solvency or ability to satisfy a judgment for damages in this case."[43] Defendant only focuses on whether Mr. Menon is solvent[44]—which would be a concern if the court were considering whether to grant a preliminary injunction—but it is irrelevant as to whether the Court should grant specific performance as part of a final judgment. Defendant's duty to post collateral on demand is a bargained-for, independent obligation under the indemnity agreement, without any requirement that Plaintiff need prove Defendant's insolvency or dissipation of assets.

In fact, the concern this presents—that defendants will seek to avoid the consequences of their bargain—is why courts often grant specific performance for collateral security provisions.

---

[40] *Id.* (emphasis added).
[41] Pl.'s Br. Supp. Mot. Summ. J. 6, ECF No. 43. The $2.03 million appraised value is from the fall of 2024. Plaintiff also notes that this is generously assuming the property could be liquidated at full value.
[42] *Id.* at 7 (calculating the collateral shortfall).
[43] Def.'s Resp. to Pl.'s Mot. Summ. J. 8, ECF No. 48.
[44] *Id.* at 7–9.

Courts have "generally granted specific performance to enforce collateral security clauses based on the premise [that] such remedy is required to protect the surety's bargain." *Washington Int'l Ins. Co. v. Keeney*, No. 4:19-cv-00632, 2020 WL 6382634, at *3 (E.D. Tex. Oct. 30, 2020) (citing *Liberty Mut. Ins. Co.*, 2004 WL 583531, at *2); *accord Hartford Fire Ins. Co. v. 3i Construction, LLC*, No. 3:16-ccv-00992-M, 2017 WL 3209522, at *2 (N.D. Tex. May 18, 2017). The agreement to post collateral ahead of time is exactly the benefit that Plaintiff contracted for. Plaintiff did not bargain to act as an unpaid, unsecured lender.

Therefore, because Plaintiff offered prima facie evidence of its liability under the contract, and because Defendant failed to present a genuine issue of material fact that would controvert Plaintiff's evidence, the Court **GRANTS** summary judgment.

### B. Preliminary Injunction Motion

Because the Court has resolved Plaintiff's motion for summary judgment, Plaintiff's need for a preliminary injunction is eliminated. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (explaining the purpose of a preliminary injunction as to prevent irreparable injury to preserve the court's ability to render a meaningful decision on the merits). Therefore, Plaintiff's motion for a preliminary injunction is **DISMISSED** as **MOOT**.

### IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 42) is **GRANTED** and Plaintiff's Second Motion for Injunctive Relief (ECF No. 39) is **DISMISSED as MOOT**. Plaintiff is entitled to damages and specific performance requiring Defendants to post collateral on its breach of contract claim. However, Plaintiff has not properly segregated the amount of attorneys' fees from the damages total. Therefore, Plaintiff is hereby **ORDERED** to

15

file supplemental briefing segregating the total requested attorneys' fees from the total requested

damages.[45]

       **SO ORDERED** this **27th day** of **October 2025**.


                          Reed O'Connor
                       **CHIEF UNITED STATES DISTRICT JUDGE**

---

[45] Plaintiff must follow the *Johnson* factors as it relates to its request for attorneys' fees. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

16